**SO ORDERED.**

**SIGNED this 25 day of January, 2008.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### WILSON DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **WILLIAM R. FREELOVE** | **07-02399-8-RDD** |
| **SARAH J. FREELOVE** | |
| **DEBTORS** | |

### ORDER DENYING CONFIRMATION OF PLAN AND
### DENYING APPROVAL OF DISCLOSURE STATEMENT

The matter before the court is the confirmation of the debtor's chapter 11 plan and approval of the debtor's disclosure statement.  A hearing was held in Wilson, North Carolina on January 23, 2008.

The debtors filed a petition for relief pursuant to chapter 11 of the Bankruptcy Code on July 3, 2007.  On December 12, 2007, the debtors filed a chapter 11 plan and disclosure statement.  On December 14, 2007, an order was entered conditionally approving the disclosure statement and setting for hearing the confirmation of the debtors' plan.  Thereafter, an objection to the confirmation of the plan and to the disclosure statement was filed by the Bankruptcy Administrator.  There was also an objection to the confirmation of the plan filed on behalf of GMAC.  However, at the hearing of this matter, counsel for the debtors indicated that counsel for GMAC had

conditionally provided approval of GMAC's treatment under the plan with the addition of certain terms of treatment of the GMAC claims.

At the hearing, Mr. Freelove testified that he and his wife previously owned twelve McDonald's restaurants, which were sold approximately five years ago. The sale resulted in significant capital gains taxes of over $600,000.00 and tax liability to the Internal Revenue Service and the North Carolina Department of Revenue.[1] Mr. Freelove explained that most of the proceeds of the sale, a few million dollars, was used to pay off loans to the bank. Mr. Freelove could not recall the sales price of the transactions. Mr. Freelove testified he netted less than $100,000.00 from the sale, some of which was used to fund the purchase of Mr. Freelove's new franchise, F & P Lawns, LLC d/b/a U.S. Lawns. Mr. Freelove was unaware of the exact amount of the net proceeds received from the sale of the McDonald's stores. Mr. Freelove explained that the debtors felt it necessary to liquidate their interests in the McDonald's franchises because of losses created by the remodeling and/or rebuilding of several restaurants.

Mr. Freelove testified that the debtors own two valuable paintings. The Francis Speight painting was purchased for approximately $20,000.00. The Sarah Blakeslee painting was purchased for approximately $2,000.00. Only ownership of one painting was disclosed in Schedule B of the petition. The additional painting was disclosed at the 341 meeting, but Schedule B has never been amended to disclose ownership. He also testified that the couple had an eight-piece place setting of sterling silver and flatware in their safe deposit box, but was unsure of the value.

---

[1]The Internal Revenue Service has filed a secured claim for $870,425.64 and a priority claim for $61.08 for a total of $870,486.72. The North Carolina Department of Revenue has filed a claim for $385,239.01, which the debtor proposes to treat as an unsecured claim in Class 7.

Upon questioning regarding a Ridgewood Electric trust held by Mr. Freelove, he indicated that he had inherited the trust and that he had been unsuccessful in his attempts to sell the trust. Although the trust had previously paid dividends on a quarterly basis, it had failed to do so for the past few quarters. The bankruptcy petition reflected that Mr. Freelove would receive approximately $4,000.00 per year from the trust, which was contradictory with his testimony.

Mr. Freelove indicated that additional funds were also gained by the debtors over the past several years through the sale of a home, the sale of some of Mrs. Freelove's jewelry and the sale of Mr. Freelove's interest in Montrose Apple Valley, LLC. Mr. Freelove was unsure of amounts of money received from these transactions. Question #2 in the statement of financial affairs disclosed receipt of $163,900.00 from Montrose Apple Valley, LLC in 2006. Mr. Freelove stated some of these monies were invested in F & P Lawns, LLC and also used to pay debts.

In clarifying the debtors' Schedules I and J, Mr. Freelove admitted that a double deduction had been taken for health insurance premiums, which would result in an additional amount of disposable income in excess of $800.00 per month. He also indicated that the couple has no automobile which is owned by them, as the automobiles are owned by his company, and are paid for by the company.

Upon review of the balance sheet for the debtors' company, F & P Lawns, LLC the debtor indicated that, although the value of the company appeared to be in excess of that claimed in the debtor's petition, the company's going concern value would not be significant without the involvement of Mr. Freelove. Mr. Freelove was questioned by the bankruptcy administrator on the balance sheets attached to the monthly reports. The October balance sheet showed total assets of $222,606.08, total liabilities of $2,679.18, and total equity of $219,926.90. The November balance

sheet showed total assets of $209,709.90, total liabilities of $8,017.11, and total equity of $201,692.79. The debtor's Schedule B describes U.S. Lawns of Greenville as a "fledgling lawn business" with a value of $1.00. The disclosure statement values it at $61,000.00. No detailed explanation is provided to explain the different valuations of Mr. Freelove's interest in F & P Lawns set forth in the petition, disclosure statement and monthly reports.

Although the court found several discrepancies in the debtor's schedules and the debtor's testimony, counsel for the debtor argued that the debtors' plan should be confirmed as any amount up to approximately $860,000.00 would be payable to the Internal Revenue Service on its secured claim for tax liability created by the sale of the McDonald's franchises. The IRS has currently agreed to settle for $268,032.00 payable over 30 years. Also, all other classes voted in favor of the plan, except for the North Carolina Department of Revenue, which did not vote at all. Because there is some repayment to each class, counsel for the debtors argue that the plan should be confirmed.

The bankruptcy administrator argues that, although the IRS has agreed to accept less than payment in full, the court must still find that the plan and disclosure statement are proposed in good faith. The bankruptcy administrator argued that this good faith is not apparent, as the debtors' valuation of their business is not credible and there appears to be many discrepancies in the debtors' income. Also, there is some question as to the accuracy of the liquidation test. On the other hand, the bankruptcy administrator acknowledged that any additional corrections to the plan and disclosure statement would probably not have an effect on the votes of the creditors.

11 U.S.C. § 1125(b) provides for a disclosure statement with "adequate information." 11 U.S.C. § 1125(a)(1) provides:

(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the

debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

The court has concerns regarding the lack of detailed disclosures made by the debtors to their creditors in the disclosure statement. The court finds that the disclosures are insufficient in detail to provide the creditors with an accurate basis for determining their position and their ability to make an informed decision with regard to the acceptance or rejection of debtors' plan. This is a complex case. The debtors' financial decline began when the debtors sold twelve McDonald's restaurants for unknown millions of dollars which created an enormous capital gains tax liability. Funds from this sale were used to purchase a franchise in U.S. Lawns. Numerous questions remain unanswered regarding valuation of various assets. Creditors, especially the IRS, would be enormously benefitted by a detailed and factual synopsis of assets and their valuation.

Specifically, the disclosure statement is lacking detail in areas including, but not limited to, the following matters. The statement provides no details of the financial history of the debtors and the sales of the twelve McDonald's restaurants with figures showing receipts and disbursements. It fails to disclose any prepetition efforts to pay the IRS and the North Carolina Department of Revenue or to disclose any amounts paid to them. It also fails to disclose details regarding the sale of the Montrose Apple LLC in 2006 and the use of these funds. Further, the debtors did not disclose the proceeds of the sale of Mrs. Freelove's jewelry and the use of those proceeds. The disclosure statement also fails to provide sufficient information regarding F & P Lawns, LLC, such as the

5

history of its commencement, the funds invested in it, its assets, valuation of assets, its history of growth or decline in business, the value of the accounts receivable and the good will, and the value of the twenty-year franchise agreement.  No comparison or analysis of the different values of F & P Lawns, LLC shown on Schedule B, the balance sheets attached to the monthly reports, and Exhibit C of the disclosure statement is shown.

The debtors also fail to discuss postpetition events such as a summary of their monthly reports, income and expenses, and the balance sheets attached to the monthly reports.  The debtor failed to disclose the tax value of their residence, which according to the records of the Office of the Tax Assessor of Pitt County, North Carolina has a total market value of $373,610.00.[2]  The debtor should also disclose all assets, such as the sterling silver, flatware, and the Blakeslee painting, with petition values, appraised values, and purchase price.  The debtor should also project the consequences to creditors if the plan confirmation was denied or if the case were dismissed or converted to chapter 7.

The debtors also requested that the debtors' discharge be entered upon confirmation of the debtors' plan.  However, the debtors have not set forth facts which would support cause for allowing entry of the discharge at that stage of the case as required by 11 U.S.C. § 1141(d)(5)(A).  Such request for early entry of the discharge must be disclosed in a **conspicuous** manner in the amended disclosure statement.

11 U.S.C. § 1129(a)(3) sets forth the good faith requirement for plan confirmation.  The many discrepancies in the petition, testimony, disclosure statement, and monthly reports, and the

[2]Compare the tax value of $373,610.00 with the petition value of $375,000.00 and Exhibit B disclosure statement value of $310,000.00.

lack of adequate information in the disclosure statement bolster the argument of the bankruptcy administrator that confirmation should be denied.  A ruling by this court on the good faith issue at this time would be premature, and is reserved for future consideration.

Based on the foregoing, the confirmation of the debtors' chapter 11 plan and approval of the debtors' disclosure statement is **DENIED**.  The debtors must correct the deficiencies in their disclosure statement and file and serve an amended disclosure statement and plan with ballots for accepting or rejecting the plan, on or before March 23, 2008.

**SO ORDERED**.

**END OF DOCUMENT**